UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Case No. 1:18-CV-43

| | |
|---|---|
| SHEILA FENDER | |
| Plaintiff, | |
| v. | **AMENDED AND SUPPLEMENTAL COMPLAINT** |
| BILTMORE FOREST COUNTRY CLUB, INC. and DOES ONE through FOURTEEN, Defendants. | |

Plaintiff, Sheila Fender ("Plaintiff" or "Ms. Fender"), who has worked for Biltmore Forest Country Club, Inc. ("BFCC") for approximately forty-four (44) years, complaining of Defendant BFCC, and Doe Defendants One through Fourteen, alleges as follows:

## INTRODUCTION

1.     This is an action for violation of the Fair Labor Standards Act (hereafter "FLSA"), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act (hereafter "NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.*, brought by Plaintiff, a long-time, current employee of BFCC, alleging that as a result of the policies, practices, and procedures of Defendants, Defendants willfully and unlawfully failed to record the number of hours Plaintiff worked each workweek and deprived Plaintiff of her lawful compensation by failing to pay Plaintiff the applicable time-and-one-half overtime rate for all hours that Plaintiff worked in excess of forty (40) hours per week.  Additionally, Plaintiff asserts a claim for retaliation under the FLSA for Defendant's ongoing retaliation for engaging in protective activity.

2. Jon Rector, the BFCC's Head Gold Pro and Ms. Fender's current direct supervisor, has already admitted to Ms. Fender that the BFCC misclassified her for overtime compensation purposes.

3. Even after Plaintiff submitted a written request to BFCC's Board of Governors, in which Plaintiff requested payment of unpaid overtime (and pleaded for the Board's help opposing BFCC's ongoing unlawful discrimination against older, long-time employees such as Plaintiff and retaliation against Plaintiff for opposing the same), BFCC has not paid Plaintiff for any overtime hours worked and has not investigated the string of Equal Employment Opportunity Commission ("EEOC") Charges recently filed against BFCC, all of which shows a willful disregard for wage and other employment laws aimed at protecting employees like Plaintiff at BFCC.

4. Indeed, BFCC recently responded to Plaintiff's plea for help with a letter from counsel purporting to be a settlement response, in which BFCC makes a number of false and misleading factual statements about Plaintiff's employment and the EEOC's action on the recent charges of discrimination filed against BFCC and, more importantly, in which BFCC makes even more clear that BFCC intends to terminate or otherwise compel Plaintiff to resign her employment with BFCC after she justifiably complained about BFCC on-going, knowing failure to compensate Plaintiff for all overtime hours worked and other discriminatory practices. Notably, after over forty-four years of faithful service to the BFCC, this letter by Defendant's counsel, which followed Plaintiff's exercise of protected activity under EEO and wage laws (including the FLSA), reveals that BFCC now desires a separation of Plaintiff's employment.

5. Liquidated damages should be awarded to Ms. Fender under the NCWHA because the BFCC cannot show that the act(s) or omission(s) constituting the violations

complained of herein were in good faith and that the employer had reasonable grounds for believing that the act(s) or omission(s) were not a violation of the NCWHA.

6.     Likewise, Plaintiff should be entitled to recover overtime for a three (3) year period under the FLSA because the BFCC's failure and refusal to fully compensate Plaintiff for all overtime hours worked is willful.

7.     Since Plaintiff gave written notice of the BFCC's failure to pay her overtime to the BFCC's Board of Governors and its counsel, and even since filing the instant litigation, BFCC has still failed to pay her for any overtime compensation owed.

## PARTIES, JURISDICTION, AND VENUE

8.     Ms. Fender is a resident of Asheville, Buncombe County, North Carolina and citizen of the United States. She has resided in Asheville, Buncombe County, North Carolina for the entire duration of her many years of employment with BFCC.

9.     Ms. Fender started working at the front desk of BFCC in 1972, but after a couple of years left voluntarily to return to work as a dental hygienist.    After repeated requests by BFCC's then Golf Pro, in or about April 1975, Ms. Fender agreed to return to work at BFCC, at which time she started working in the Golf Shop.

10.     Defendants, Does One through Fourteen, are (a) the members of the Control Group Managers, as defined herein below, who controlled the wage decisions and/or practices and policies at issue in this litigation during time periods relevant to Plaintiff's claims, and (b) residents of North Carolina.  Plaintiff gives specific notice that she will seek discovery to more specifically identify which Members of the Control Group Managers were among the members who controlled the wage decisions and/or practices and policies at issue in this litigation during time periods relevant to Plaintiff's claims, as such members fall within the FLSA's and the

NCWHA's definition of "Employer" who are personally, jointly and severally liable for the damages sought herein.

11.     In or about 1980, Ms. Fender was promoted to Golf Shop Manager, a position she has held ever since.

12.     Since becoming Golf Shop Manager until about June 2017, when the BFCC Golf Pro, John Rector, cut Ms. Fender's hours and told her she that was misclassified for overtime pay purposes, Ms. Fender regularly and consistently worked approximately eighty hours per workweek; more specifically, she routinely and customarily worked six (6) days per week about thirteen (13) hours per day, in addition to some work on Mondays, her scheduled day off.  At all times relevant to this lawsuit, BFCC permitted Ms. Fender to work the hours she actually worked and to perform the duties she actually performed during the course of her employment with BFCC.

13.     Sometime approximately twenty years ago, Ms. Fender was salaried by the BFCC.

14.     At all relevant times, Plaintiff was, and is, an "employee" of BFCC within the meaning and definition of the FLSA, 29 U.S.C. § 203(e), and the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

15.     During her employment with BFCC, Plaintiff's rights under the FLSA and the NCWHA were violated, as more specifically set forth below.

16.     Established in 1922, BFCC is a corporation organized and existing under the laws of the State of North Carolina, having its principal place of business in Asheville, Buncombe County, North Carolina.

17.     Defendant BFCC is a private country club, with a fitness center, tennis facilities, and golf course located within the Town of Biltmore Forest, North Carolina.

18.     At all relevant times, BFCC was, and is, an "employer" within the meaning and definition of the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. 95-25.2(5).

19.     Likewise, members of the Control Group Managers who were among those who controlled the wage decisions and/or practices and policies at issue in this litigation during time periods relevant to Plaintiff's claims, as defined herein below, fall within the FLSA's and NCWHA's definition of Employer.

20.     This Court has both personal and subject matter jurisdiction over this civil action in which Plaintiff seeks to recover unpaid wages and other damages, arising out of Defendant BFCC's failure to pay Plaintiff overtime wages in violation of the FLSA and the NCWHA.

21.     Accordingly, the Court has jurisdiction over the subject matter and parties involved in this case.

22.     Venue is proper in Buncombe County, North Carolina pursuant to N.C. Gen. Stat §§ 1-80 and 1-82.

### FACTUAL ALLEGATIONS

23.     In or about 1980, BFCC promoted Ms. Fender to work as its Golf Shop Manager and, at all relevant times thereafter, BFCC employed and continues to employ Ms. Fender in that position.

24.     In the position of BFCC's Golf Shop Manager, Plaintiff's primary job duties include clerical duties such as answering phones, greeting members, processing merchandise purchases, scheduling lessons and tee times.

25. In the performance of her job duties, Plaintiff does not exercise discretion or independent judgment with respect to matter of significance.

26. In the performance of her job duties, Plaintiff does not perform any managerial tasks.

27. As the Golf Shop Manager, Plaintiff has no direct reports or otherwise supervisor any other employee of BFCC and Plaintiff had no authority to hire or fire other employees and any suggestion or recommendation by Plaintiff as to the hiring, firing, advancement, promotion, or status change of other employees is not given particular weight.

28. Plaintiff directly reports to John Rector, Head Golf Pro.

29. At all relevant times, Plaintiff was paid by BFCC on bi-weekly basis as a salaried "exempt" employee.  In 2016, BFCC paid Plaintiff a salary in the amount of $57,356.86 annually or $2,480.33 per pay period, less applicable taxes and deduction.

30. From the start of her employment until the BFCC initiated a new policy in or about June 2017, BFCC never recorded or otherwise documented the number of hours Plaintiff worked. Nor did BFCC require Plaintiff to submit time sheets or in any manner record the number of hours she worked from the start of her employment until in or about June 2017; therefore, there are no time-keeping records that show the precise number of hours that Plaintiff worked each workweek of her employment with BFCC during the aforementioned time period.

31. Throughout Plaintiff's employment with BFCC, Plaintiff routinely worked thirteen (13) hours per day, Tuesday through Sunday, and often some additional hours on Monday, her scheduled day off.

32. Throughout Plaintiff's employment with BFCC, Plaintiff never worked less than forty (40) hours per workweek.

33.     Since around June 2017, BFCC has instructed Plaintiff not to work more than 40 hours in a workweek.

34.     Throughout Plaintiff's employment with BFCC, Plaintiff received equal pro rata installments of her salary on a bi-weekly basis, regardless of the number of hours she worked over forty (40) hours per workweek during each pay period.

35.     BFCC never paid Plaintiff any overtime compensation for hours she worked in excess of forty (40) hours in any workweek; however, Plaintiff does not, and has never, qualified for any overtime exemption under the FLSA or the NCWHA as her above listed duties and responsibilities do not meet the exemption requirement for any overtime exemption under the FLSA or the NCWHA.

36.     From about 1980 to present, BFCC knew, or should have known, that Plaintiff is not an "exempt" employee under the FLSA or the NCWHA and that she was entitled to receive overtime pay for hours worked in excess of 40 hours per week.

37.     Although, in or about June 2017, BFCC's Head Golf Pro (John Rector) acknowledged directly to Ms. Fender that BFCC misclassified her as exempt from overtime; however, even since that acknowledgment BFCC has not compensated her from earned, uncompensated overtime hours work and has instead continued retaliatory efforts to terminate Ms. Fender's long time employment, as further detailed herein.

38.     As a result of being misclassified as an exempt employee, Plaintiff worked a substantial number of overtime hours without receiving overtime compensation.

39.     In or about June 2017, BFCC told Plaintiff that going forward she should not work more than forty (40) hours in a workweek.  However, for the three years prior to June 2017, Plaintiff worked approximately 30 to 40 hours of overtime per workweek, resulting in

approximately 4,680 to 6,240 overtime hours during that three-year period for which BFCC failed to pay Plaintiff the applicable time-and-one-half rate each of those hours.

40.     Because BFCC did not keep time-keeping records that show Plaintiff's hours during the time periods relevant to this litigation proceeding, there is no record to show Plaintiff's overtime hours as being any different from those pled above.

41.     Just before the BFCC reduced Ms. Fender's hours in or about June 2017 so that Plaintiff no longer works more than forty (40) hours in any workweek, BFCC's current General Manager, Head Golf Pro, and upon information and belief one or more members of BFFC's current Board of Governors (collectively "the Control Group Managers") initiated a scheme of retaliation and harassment against Ms. Fender, which upon information and belief was motivated by, among other unlawful reasons, the unlawful desire to (a) discriminate against and terminate BFCC's older, long-time employees, (b) retaliate against Plaintiff for opposing such unlawful age discrimination, and (c) induce Plaintiff to quit her job and leave the employ of BFCC without seeking the substantial overtime compensation that she is owed or the associated interest, attorneys' fees, costs, and   liquidated damages due based on BFCC's failure to pay such overtime in the time and manner required under state and federal wage laws.

42.     For example, on or about May 31, 2017, Ms. Fender was threatened with termination and placed on a 90-day Performance Improvement Plan that unjustifiably restricted her ability to communicate with club members and criticize management's personnel decisions, despite the fact that such communications are lawful channels for Plaintiff to oppose unlawful discrimination and retaliation since BFCC Management answers to the Board of Governors and BFCC members hold the ultimate power to replace the Board of Governors when BFCC

Management and/or Board of Governors Members fail to take reasonable and necessary action to investigate, end, and remedy unlawful employment practices.

43.     Even after Ms. Fender and other current and former employees filed Charges of Discrimination with the EEOC, the Control Group Managers and BFCC's Human Resources Representative have not conducted any meaningful investigation into the multiple EEOC charges filed by Ms. Fender and other long-time employees of BFCC; neither Ms. Fender nor other charging parties have been interviewed by Human Resources or counsel to inquire into the underlying facts of the EEOC Charges. Instead, the Control Group Managers' treatment and retaliation against Ms. Fender continues to work its course towards what appears to be an inevitable retaliatory discharge, as further made clear by BFCC's response to Plaintiff's recent plea to the Board for help.

44.     Since Plaintiff began engaging in protected activity under EEO and wage laws (including the FLSA), BFCC has engaged in on-going efforts to undermine Ms. Fender's credibility with members of BFCC in her exercise of protected activity, including, but not limited to, making statements likely to confuse BFCC members that the EEOC's issuance of notice of right to sue letters and/or its "no cause finding" shows that Ms. Fender's, and other employees', claims were somehow meritless or that BFCC "has prevailed" at the EEOC level.  These continued attempts to discredit Ms. Fender are retaliatory in violation of the FLSA, as they are intended to harass her for exercising rights under EEO and wage laws (including the FLSA) and to undermine and interfere with her engagement in protected activity under EEO and wage laws.

45.     On or about January 30, 2018, a week after Plaintiff filed the original Complaint, BFCC members, upon information and belief acting at the direction of BFCC Board Members, began conveying messages from BFCC Board Members demanding that Plaintiff to drop her

lawsuit and threatening her employment, in retaliation for her protected activity under EEO and wage laws (including the FLSA).

46.　　On or about January 30, 2018, David Gaines, a member of BFCC, called Plaintiff while she was at work and asked to meet with her over coffee.

47.　　That same day, Plaintiff met with Mr. Gaines at a nearby Starbucks for about an hour.  At the meeting, Mr. Gaines told Plaintiff that she should drop the lawsuit, that she was not going to win, and that she was going to be fired. He also said that John Rector and Calvin Bolling had not done anything wrong and would not be fired.  Plaintiff told him about BFCC's horrible treatment of Carlos and Randy (the other long-time BFCC employees who recently filed EEOC charges). Mr. Gaines said: "Forget about them, they don't count." He further threatened that if Plaintiff let this go to court, it would diminish all that Plaintiff had done for the club, she would not win, and it would make her "look horrible" and make her old friends "look like idiots". He told Plaintiff that he cared about her and that she had done so much for BFCC that he wanted her to go out on a better note.  Mr. Gaines volunteered to go with Plaintiff to the Board to tell them that she was dropping her lawsuit, and said BFCC would then pay her something for the overtime she was due and give her a retirement party.  He then reiterated that she could not win against BFCC, and that she would end up looking bad and without a job.  He instructed her to call her attorney and tell him that she did not need him anymore. He asked what Plaintiff thought, and she said she was going to go home and think about it. Mr. Gaines said: "You have 24 hours to decide."

48.　　On the way home, Mr. Gaines texted Plaintiff and thanked her for her time.

49.　　The next morning, Mr. Gains again called Plaintiff at work and asked: "what did you decide."  Plaintiff said: "I have not decided anything."  Mr. Gaines reminded her that BFCC

would "drag her through the mud in court", that she was not going to win, and that BFCC had embarrassing footage of her, because "they have cameras all around the club and you are on the camera with your good buddy and it's going to embarrass you to death."  Plaintiff asked: "How do you know that?" He said never mind, you just need to do something. Plaintiff asked, what about this 24-hour deadline. He said, forget that, you can have a little longer but let me know when you decide.

50.　　Later that same afternoon, on January 31, 2018, a long-time BFCC member called Plaintiff and said that two Board Members had called him and said that Plaintiff needed to drop her lawsuit, and that they wanted her to retire, and they would throw her a party. He explained that he responded to the Board Members by saying: "I love Sheila. If you took a vote of the membership, she would win hands down over either Bolling or Rector."  He further shared that the Board Members told him to call Plaintiff to relay their message and not to tell her who asked him to do so. He said he was just relaying the Board Members' message but said he could not reveal their names.

51.　　On or about February 20, 2017, Mr. Rector, BFCC's Head Golf Pro and Plaintiff's direct supervisor, posted a list of the 2018 BFCC employees with their contact information in the clubhouse.  Noticeably absent from the list was Plaintiff's name and contact information.

52.　　A week later, on or about February 27, 2018, Rector posted in the Golf Shop the schedule for March 2018, which omitted Plaintiff entirely.

53.　　Plaintiff read the schedule to mean that her employment was indeed being terminated, just as the members had warned, in retaliation for her asserting legal rights under EEO and wage laws.

54.     The following day, when Plaintiff confronted Mr. Rector about the schedule posting, he claimed he was going to post her schedule separately.  Plaintiff did not find Mr. Rector's explanation believable, as she had been listed on the same schedule as all other golf operations employees the prior month and the posting followed so closely after Rector had posted the 2018 list omitting her entirely.

55.     Mr. Rector 's conduct in omitting Plaintiff's name from the list of the 2018 BFCC employees and removing her from the March 2018 work schedule are not the product of innocent mistakes but rather the latest acts of retaliation.  Such retaliatory harassment plainly reinforces the BFCC's prior repeated threats that she will be fired for her protected activity and create a hostile environment intended to compel Plaintiff to resign.

56.     While the letter from BFCC's counsel forecasted that following Plaintiff's exercise of her rights under the applicable wage laws (including the FLSA) BFCC desired a separation of Plaintiff's employment, the subsequent retaliatory messages upon information and belief relayed through members at the direction of BFCC Board Members, combined with ongoing retaliatory harassment by Plaintiff's direct Supervisor (Mr. Rector), evidence an ongoing, escalating retaliatory scheme.  Defendant's retaliatory actions continue to this day, in the form of on-going intimidation tactics, are intended to bully Plaintiff to submit her resignation, dismiss her lawsuit, and accept a reduced amount for overtime compensation she is owed.

## FIRST CAUSE OF ACTION
### VIOLATION OF N.C. WAGE & HOUR ACT – OVERTIME WAGES

57.     Plaintiff re-alleges and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

58.     It is unlawful under the NCWHA for an employer to require or permit an employee to work without paying compensation for all hours worked.

59.     It is unlawful under the NCWHA for an employer to require or permit a non-exempt employee to work in excess of 40 hours per week without paying overtime.

60.     The position of Golf Shop Manager does not meet the standards for exemption under the NCWHA, N.C. Gen. Stat. § 95-25.14.

61.     Plaintiff routinely worked in excess of 40 hours per week during the relevant time period.

62.     Defendant failed to pay Plaintiff overtime pay at a rate of one and one half times Plaintiff's hourly rate for all hours she worked in excess of 40 hours per workweek in violation of N.C. Gen. Stat. § 95-25.4.

63.     Defendant failed to make, keep, and preserve accurate time records with respect to Plaintiff sufficient to determine her wages and hours in violation of N.C. Gen. Stat. § 95-25.15.

64.     In committing the wrongful acts alleged to be in violation of the NCWHA, Defendant acted willfully, not in good faith and without reasonable grounds in that it knowingly, deliberately, and intentionally failed to pay overtime to Plaintiff.

65.     As a result of Defendant's willful and intentional conduct and as set forth above, Plaintiff has sustained losses in compensation as a proximate result of Defendant's violations of the NCWHA by being deprived of overtime compensation in accordance with the NCWHA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated and statutory damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs, and

other compensation pursuant to the NCWHA, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22.

## SECOND CAUSE OF ACTION
### VIOLATION OF FAIR LABOR STANDARDS ACT – OVERTIME WAGES

66.     Plaintiff re-alleges and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

67.     It is unlawful under the FLSA for an employer to require or permit an employee to work without paying compensation for all hours worked.

68.     It is unlawful under the FLSA for an employer to require or permit a non-exempt employee to work in excess of 40 hours per week without paying overtime.

69.     The position of Golf Shop Manager does not meet the standards for exemption under the FLSA, 29 U.S.C. § 213(a).

70.     Plaintiff routinely worked in excess of 40 hours per week during the relevant time period.

71.     Defendant failed to pay Plaintiff overtime pay at a rate of one and one half times Plaintiff's hourly rate for all hours she worked in excess of 40 hours per workweek in violation of 29 U.S.C. § 207(a).

72.     Defendant failed to make, keep, and preserve accurate time records with respect to Plaintiff sufficient to determine her wages and hours in violation of 29 U.S.C. § 211.

73.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully, not in good faith and without reasonable grounds in that it knowingly, deliberately, and intentionally failed to pay overtime to Plaintiff.

74.     As a result of Defendant's willful and intentional conduct and as set forth above, Plaintiff has sustained losses in compensation as a proximate result of Defendant's violations of

the FLSA by being deprived of overtime compensation in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated and statutory damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs, and other compensation pursuant to the FLSA, as provided by the FLSA, 29 U.S.C § 216.

**THIRD CAUSE OF ACTION**
**VIOLATION OF FAIR LABOR STANDARDS ACT – RETALIATION**

75.     Plaintiff re-alleges and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

76.     It is unlawful under the FLSA, 29 U.S.C. § 215, to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA.

77.     On December 5, 2017, Plaintiff submitted a written request to BFCC's Board of Governors, in which Plaintiff requested payment of unpaid overtime, noting that filing a lawsuit to recover the unpaid overtime was not her preferred manner of resolving this matter.

78.     On January 1, 2018, BFCC responded with a letter from its counsel in which BFCC made clear that BFCC intended to terminate or otherwise compel Plaintiff to resign her employment with BFCC after she justifiably complained about BFCC on-going, knowing failure to compensate Plaintiff for all overtime hours worked and other discriminatory practices and attempted to undermine the credibility of Plaintiff with members of BFCC, who are an appropriate challenge for such complaints and redress, as they have the power to remove offending members of the Control Group Managers.

79.     On January 23, 2018, Plaintiff initiated this action against Defendant in Buncombe County, North Carolina Superior Court, alleging among other things violation of the Fair Labor Standards Act's overtime compensation provisions, 29 U.S.C. § 207(a).

80.     Immediately following the filing of this action, beginning on or about January 30, 2018, and as foreshadowed by the response letter from Defendant BFCC's counsel, several members of BFCC contacted Plaintiff to convey messages from members of BFCC's Board of Governors ordering her to drop this action in exchange for permitting her to retire "with dignity", and otherwise warning her that her employment would be terminated and that if this action continued, the BFCC would drag her through the mud in court with embarrassing evidence to humiliate her.

81.     Defendant's actions constitute adverse employment actions against Plaintiff, that continue to this day, in the form of on-going intimidation tactics, including attempting to bully Plaintiff to submit her resignation, threatening her with discharge and humiliation if she continued to complain of Defendant's FLSA violations, and removing Plaintiff from the 2018 employee list and March work schedule, either as notice of termination or to harass her into believing she was terminated in retaliation for her protected activity under EEO and wage laws.

82.     Defendant's actions are a direct result of Plaintiff threatening, and then actually, filing this action to assert her rights under the FLSA.

83.     In committing the wrongful acts alleged to be in violation of the FLSA anti-retaliation provision, Defendant acted willfully, not in good faith and without reasonable grounds in that it knowingly, deliberately, and intentionally threatened and intimidated Plaintiff as a direct result of filing this action.

84.     As a result of Defendant's willful and intentional conduct and as set forth above, Plaintiff is entitled to recover damages in amounts to be determined at trial, liquidated and statutory damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs, and other compensation pursuant to the FLSA, as provided by the FLSA, 29 U.S.C § 216.   In

addition, Plaintiff is entitled to injunctive relief against Defendants, as a result of Defendants' on-going retaliatory conduct aimed at intimidating Plaintiff from asserting her rights under the FLSA.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues presented herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a) An order enjoining Defendants from violating the FLSA anti-retaliation provisions, 29 U.S.C. § 215(a)(3), by demanding Plaintiff dismiss this action, threatening to terminate her employment, removing her from the work schedule, or other retaliatory tactics aimed at intimidating or harassing Plaintiff for asserting her rights under the FLSA;

(b) Declaratory relief declaring the Defendant(s) violated the FLSA and the NCWHA;

(c) Unpaid wages and overtime pay, and an additional amount as liquidated damages pursuant to the FLSA, 29 U.S.C § 216, and the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

(d) Pre-judgment and post-judgment interest, as provided by law;

(e) Reasonable attorneys' fees and costs of this action, pursuant to the FLSA, 29 U.S.C § 216, and the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

(f) Such other, further, or different relief as the Court deems necessary, just, and proper.

Respectfully submitted this the 11th day of May, 2018.

s/J. Kellam Warren
J. Kellam Warren (NC Bar No. 26811)
MAINSAIL LAWYERS
14 South Pack Square, Ste. 502
Asheville, NC 28801
Telephone: (919) 238-4088
Facsimile: (888) 501-9309
Email: Kellam@mainsaillawyers.com
*Counsel for Plaintiff*

**CERTICATE OF SERVICE**

The undersigned hereby certifies that on May 11, 2018 the foregoing was electronically filed with the Clerk of the United States Court for the Western District of North Carolina, Western Division, using the Court's CM/ECF system which will automatically serve all counsel of record via electronic delivery.

s/J. Kellam Warren
J. Kellam Warren